No._ _ _ _ _ _ _ _ _ _

## UNITED STATES DISTRICT COURT

Eastern District of Pennsylvania

<u>Criminal Division</u>

THE UNITED STATES OF AMERICA
vs.
Fritzroy Brown
Thael Kuran
Craig Brown
Derrick Brown
William Conner
Keisha Regusters

## INDICTMENT

Counts
18 U.S.C. § 1349 (conspiracy to commit health care fraud - 1 count)
18 U.S.C. § 641 (theft of government property – 1 count)
18 U.S.C. § 1343 (wire fraud – 3 counts)
18 U.S.C. § 1001 (false statements – 2 counts)
18 U.S.C. § 1035 (false statements in connection with healthcare matters – 4 counts)
42 U.S.C. § 1320a-7b(b) (kickback violations – 11 counts)
18 U.S.C. § 2 (aiding and abetting)

A true bill.

_____

Foreman

Filed in open court this _____day,
Of _____A.D. 20_____

_____

Clerk

Bail, $_____

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 14-_____** |
| | | |
| **v.** | : | **DATE FILED: _____** |
| | | |
| **FRITZROY BROWN** | : | **VIOLATIONS:** |
| **THAEL KURAN** | | **18 U.S.C. § 1349 (conspiracy to** |
| **CRAIG BROWN** | : | **commit health care fraud – 1 count)** |
| **DERRICK BROWN** | | **18 U.S.C. § 641 (theft of government** |
| **WILLIAM CONNER** | : | **property – 1 count)** |
| **KEISHA REGUSTERS** | | **18 U.S.C. § 1343 (wire fraud – 3** |
| | : | **counts)** |
| | | **18 U.S.C. § 1001 (false statements -** |
| | : | **2 counts)** |
| | | **18 U.S.C. § 1035 (false statements in** |
| | : | **connection with health care matters** |
| | | **– 4 counts)** |
| | : | **42 U.S.C. § 1320a-7b** |
| | | **(kickback violations – 11 counts)** |
| | : | **18 U.S.C. § 2 (aiding and abetting)** |
| | | **Notice of forfeiture** |

## <u>I N D I C T M E N T</u>

### <u>COUNT ONE</u>
### (Health Care Fraud Conspiracy – THAEL KURAN and FRITZROY BROWN)

**THE GRAND JURY CHARGES THAT:**

At all times material to this indictment:

**A.** <u>**The Defendants**</u>

1. Defendant THAEL KURAN was an employee of Brotherly Love Ambulance, Inc. ("Brotherly Love"), which operated until October 2011 in the City of Philadelphia. Brotherly Love was owned by defendant KURAN's mother, FEDA KURAN, charged elsewhere, and by others known to the grand jury.

2. Defendant FRITZROY BROWN was an employee of Brotherly Love and a registered Emergency Medical Technician ("EMT") in the Commonwealth of Pennsylvania.

3.     Defendant CRAIG BROWN was a resident of Pennsylvania who was ostensibly a patient of Brotherly Love, allegedly being transported to and from dialysis by Brotherly Love.

4.     Defendant DERRICK BROWN was a resident of Pennsylvania who was transported to and from dialysis by Brotherly Love.

5.     Defendant WILLIAM CONNER was a resident of Pennsylvania who was transported to and from dialysis by Brotherly Love.

6.     Defendant KEISHA REGUSTERS was a resident of Pennsylvania who was transported to and from dialysis by Brotherly Love.

**B.     The Medicare Program**

7.     Medicare was a federal health insurance program, affecting interstate commerce, that provided benefits to individuals who were over the age of 65 or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services.  Medicare was a "health care benefit program" as defined by Title 18, United States Code, Section 24(b).

8.     Medicare was subdivided into several parts.  Medicare Part B covered, among other things, ambulance services.

9.     Individuals who qualified for Medicare benefits were commonly referred to as "Medicare beneficiaries."  Each Medicare beneficiary was given a unique Medicare identification number.

10.     CMS contracted with private insurance companies under Part B to receive, adjudicate, and pay Medicare claims submitted by approved and participating health care providers and suppliers.  Once contracted to process Medicare Part B claims, these private

2

insurance companies were known as Medicare Administrative Contractors ("MACs"). CMS

contracted with Highmark Medicare Services ("Highmark"), now Novitas Solutions, to be the

MAC to process and pay Medicare Part B claims in the Commonwealth of Pennsylvania

(Highmark and Novitas Solutions are collectively referred to as "Novitas" in this indictment).

   11. Novitas processed applications from medical providers seeking to enroll in

the Medicare program. Once the provider application was reviewed and approved, a provider

was enrolled in the Medicare program and was issued a unique provider number. The Medicare

provider was required to include its provider number on all claims submitted by the provider to

the MAC for payment.

   12. Upon enrollment, providers were issued a provider manual that generally

described the requirements to participate as a provider in the Medicare program. Providers also

periodically received newsletters advising them of additional requirements for participation and

instructions concerning which services were covered or not covered by Medicare and the

prerequisites for coverage.

**C.** **Payment for Medicare Claims to Providers**

   13. Under regulations promulgated by Medicare, providers and suppliers of

Medicare Part B services were required to submit, within one year from the date of service,

claims to the MACs on behalf of Medicare beneficiaries. During this period, providers could file

their Medicare Part B claims either electronically or in paper form.

   14. When a provider submitted a claim for payment to Medicare for

ambulance transport services, the claim was required to include information such as the

beneficiary's name, address, unique identification number, the date and place of service, and the

type of services rendered, which were identified by individual codes.

3

15.     Providers were required to certify, among other things, that they agreed to abide by the Medicare laws, regulations, and program instructions that apply to the supplier and that payment of a claim by Medicare is conditioned upon the claim and the underlying transaction complying with such laws, regulations, and program instructions (including but not limited to the Federal anti-kickback statute).  The provider number was included as a part of each submission.

16.     Medicare covered ambulance services only if furnished to a beneficiary whose medical condition at the time of transport was such that transportation by other means would endanger the patient's health.  A patient whose condition permitted transport in any type of vehicle other than an ambulance did not qualify for Medicare payment.  Medicare payment for ambulance transportation depended on the patient's condition at the actual time of transport regardless of the patient's diagnosis.  To be deemed medically necessary for payment, the patient must have required both the transportation and the level of service provided.

17.     Ambulance transportation was only covered when the patient's condition required the vehicle itself and/or the specialized services of the trained ambulance personnel.  A requirement of coverage was that the needed services of the ambulance personnel were provided and clear clinical documentation validated their medical need and their provision in the record of the service.  This requisite information usually was documented in a "trip sheet," which set forth all of the details related to any one specific transportation of a beneficiary, including (a) beneficiary name; (b) beneficiary address; (c) destination; (d) date and time of dispatch, pickup and drop-off; (e) names of all drivers and medical personnel on the ambulance; (f) odometer readings for the ambulance and the number of miles traveled; (g) beneficiary's present medical condition and findings; and (h) a narrative report describing how the patient was found,

4

transported, delivered and events that transpired during the trip. The "trip sheet" must support that transportation by stretcher and in an ambulance was medically necessary.

18.     In the absence of an emergency condition, ambulance services were covered only under the following circumstances: (a) the patient being transported could not be transported by any other means without endangering the individual's health or (b) the patient was before, during and after transportation, bed confined. For purposes of Medicare coverage, "bed confined" meant that the patient met all of the following three criteria: (1) unable to get up from bed without assistance; (2) unable to "ambulate," and (3) unable to sit in a chair (including a wheelchair).

19.     A thorough assessment and documented description of the patient's current state was essential for coverage. All statements about the patient's medical condition or bed confined status must have been validated in the documentation using contemporaneous objective observations and findings.

20.     In all cases, CMS required that appropriate documentation be kept on file and, upon request, presented to the carrier. As stated above, ambulance service providers were required to create a record for each transport, commonly known as a "trip sheet," which memorialized the attendant's observations about the patient's condition that demonstrated that ambulance transport was medically necessary. Medicare also required ambulance providers to obtain, prior to transport, a physician's written order certifying the need for an ambulance for scheduled non-emergency transports. A physician's order was referred to as a Physician's Medical Necessity Certification ("PMNC") or Physician Certification Statement ("PCS"). CMS made clear that neither the presence nor absence of a signed physician's order for an ambulance

5

transport proved (or disproved) whether the transport was medically necessary. The ambulance service had to meet all program coverage criteria in order for payment to be made.

21.    Ambulance transportation was covered only when the transportation was in fact provided.

22.    Medicare did not cover transportation in privately owned vehicles, vans, wheelchair vans, taxicabs or ambulettes.

### The Conspiracy

23.    From at least in or about October 2010, through in or about October 2011, in the Eastern District of Pennsylvania and elsewhere, defendants

**THAEL KURAN and
FRITZROY BROWN**

conspired and agreed, together and with FEDA KURAN, NEEL JACKSON, charged elsewhere, and others known and unknown to the grand jury, to knowingly and willfully execute a scheme to defraud Medicare, and to obtain money and property of Medicare by means of false and fraudulent pretenses, representations, and promises, in connection with the delivery of and payment for health care benefits, items and services, by submitting and causing to be submitted fraudulent claims for ambulance transportation, in violation of Title 18, United States Code, Section 1347.

### Manner and Means

24.    It was part of the conspiracy that defendants THAEL KURAN and FRITZROY BROWN and others, including FEDA KURAN, NEEL JACKSON and others known to the grand jury, provided ambulance transport services, through Brotherly Love, to Medicare beneficiaries knowing that the beneficiaries' medical condition did not necessitate the ambulance services.

6

25.    It was further part of the conspiracy to target and recruit beneficiaries who attended dialysis treatment, which is typically required three times per week, thereby allowing Brotherly Love to bill extensively for these patients.

26.    Ambulatory patients were sometimes directed to get onto a stretcher when the patients were able to walk or be moved by wheelchair.   At times, Brotherly Love would transport patients sitting in the front of vehicles, transport patients sitting up in the rear of ambulances, transport patients in a minivan, and transport patients in personal vehicles.

27.    Defendants THAEL KURAN and FRITZROY BROWN, together with NEEL JACKSON and others known and unknown to the grand jury, falsified "trip sheets" by causing "trip sheets" to reflect that patients were transported by stretcher when they were not, and by omitting information that would show that patients were able to walk.  In fact, patients often walked to the ambulance.

28.    FEDA KURAN directed Brotherly Love employees to use certain language in their "trip sheets," and omit certain facts from their "trip sheets" in order to conceal that patients were able to walk or could have been transported safely by means other than ambulance.

29.    Based on these medically unnecessary ambulance services, defendants THAEL KURAN and FRITZROY BROWN, together with FEDA KURAN, NEEL JACKSON, and others known and unknown to the grand jury, knowingly submitted, and caused to be submitted, false and fraudulent claims to Medicare on behalf of Brotherly Love.

30.    Defendants THAEL KURAN and FRITZROY BROWN, together with FEDA KURAN, NEEL JACKSON, and others known and unknown to the grand jury, paid and facilitated the payment of illegal kickbacks to patients, which ranged from $200 to $500 per

7

month on average, to induce the patients to be transported by Brotherly Love, even though transport by ambulance was not medically necessary.

31.     Defendants THAEL KURAN and FRITZROY BROWN, together with others known and unknown to the grand jury, attempted to recruit new patients through offers to pay kickbacks to ride with Brotherly Love, negotiating kickback payments with patients, and paying patients  to recruit other patients to ride with Brotherly Love.

32.     Defendants THAEL KURAN and FRITZROY BROWN, together with FEDA KURAN, NEEL JACKSON, and others known and unknown to the grand jury, created the appearance of a legitimate ambulance transport business while actually running mechanically unsound and unsafe ambulances without the required medical equipment on board.

33.     Defendants THAEL KURAN and FRITZROY BROWN, together with FEDA KURAN, NEEL JACKSON, and others known and unknown to the grand jury, provided patients completely free ambulance transport in order to induce them to use Brotherly Love. Brotherly Love did not collect co-payments from patients even though it was required to do so by Medicare.

34.     As a result of this fraudulent scheme, defendants THAEL KURAN and FRITZROY BROWN, together with FEDA KURAN, NEEL JACKSON, and others known and unknown to the grand jury, submitted, and caused to be submitted, more than $4 million in fraudulent claims to Medicare on behalf of Brotherly Love and caused Medicare to incur losses of more than $2 million.

### Overt Acts

In furtherance of the conspiracy and to accomplish its objects, defendants

### THAEL KURAN and
### FRITZROY BROWN

committed the following overt acts, among others, in the Eastern District of Pennsylvania and elsewhere:

1.     On numerous dates from in or around October 2010 through in or around October 2011, each date constituting a separate overt act, defendant THAEL KURAN signed "trip sheets" documenting medically unnecessary ambulance transports. These "trip sheets" falsely represented the medical condition of the patients, the conditions of the transports, and/or omitted the material fact that the patients being transported could walk.

2.     On numerous dates from in or around October 2010 through in or around October 2011, each date constituting a separate overt act, defendant FRITZROY BROWN signed "trip sheets" and affixed his EMT provider number documenting medically unnecessary ambulance transports. These "trip sheets" falsely represented the medical condition of the patients, the conditions of the transports, and/or omitted the material fact that the patients being transported could walk.

3.     On numerous dates from in or around October 2010 through in or around October 2011, each date constituting a separate overt act, defendant THAEL KURAN signed "trip sheets" for patient transports that did not take place via ambulance. Instead, the patients were transported in a minivan owned by Brotherly Love and driven by THAEL KURAN, or in a car owned personally by THAEL KURAN or others known and unknown to the grand jury. These "trip sheets" falsely represented the medical condition of the patients, the condition of the transports, and/or omitted the material fact that the patients being transported could walk. In

9

each case, these "trip sheets" also omitted the material fact that the transport had not been via ambulance.

4.      On numerous dates from in or around October 2010 through in or around October 2011, each date constituting a separate overt act, defendant FRITZROY BROWN signed "trip sheets" for patient transports that did not take place via ambulance. Instead, the patients were transported in a minivan owned by Brotherly Love and driven by FRITZROY BROWN, or in a vehicle owned personally by FRITZROY BROWN or others known and unknown to the grand jury. These "trip sheets" falsely represented the medical condition of the patients, the condition of the transports, and/or omitted the material fact that the patients being transported could walk. In each case, these "trip sheets" also omitted the material fact that the transport had not been via ambulance.

5.      In or around 2011, defendant FRITZROY BROWN completed, modified, or otherwise changed information on "trip sheets" for patient transports performed by another ambulance company known to the grand jury, Ambulance Company 1. Defendant FRITZROY BROWN did not perform these runs as an EMT, and defendant FITZROY BROWN added, modified, and/or certified information that he did not know to be true regarding those runs. In exchange, defendant FRITZROY BROWN was paid by Ambulance Company 1 or others known and unknown to the grand jury.

6.      On numerous dates from in or around January 2012 through at least April 2012, each date constituting a separate overt act, defendant THAEL KURAN signed "trip sheets" for another ambulance company known to the grand jury, Ambulance Company 2, as the driver of an ambulance with Ambulance Company 2. Many of these "trip sheets" documented

10

patient transports by defendant KURAN that were physically impossible for defendant KURAN to have performed.

7.     For example, defendant THAEL KURAN signed a "trip sheet" stating that on January 27, 2012, from 8:03 p.m. until 8:21 p.m., defendant KURAN had transported a patient known to the grand jury, L.B., with an EMT known to the grand jury, A.A.   Defendant KURAN also signed a "trip sheet" stating that from 8:08 p.m. until 8:16 p.m. on that same date, January 27, 2012, he had transported a different Ambulance Company 2 patient known to the grand jury, J.A., also with A.A., to a different location in Philadelphia.

8.     Similarly, defendant THAEL KURAN signed a "trip sheet" stating that on March 14, 2012, from 8:09 p.m. until 8:19 p.m., he had transported patient L.B. with A.A. Defendant KURAN also signed a "trip sheet" stating that from 8:14 p.m. until 8:26 p.m. on that same date, March 14, 2012, he had transported patient J.A. with A.A., again to a different location in Philadelphia.

9.     On various dates between in or around October 2010 and in or around October 2011, each date constituting a separate overt act, defendants THAEL KURAN and FRITZROY BROWN facilitated the payment of illegal kickbacks to beneficiaries by giving specified beneficiaries cash.

10.     On various dates between in or around October 2010 and in or around October 2011, each date constituting a separate overt act, defendants THAEL KURAN and FRITZROY BROWN and others known and unknown to the grand jury received cash payments for recruiting beneficiaries to ride with Brotherly Love.

11.     On various dates between in or about October 2010 and in or around October 2011, each date constituting a separate overt act, defendants THAEL KURAN and

11

FRITZROY BROWN caused Brotherly Love to submit claims to Medicare for patients who were never actually transported. These patients, including defendant CRAIG BROWN, routinely transported themselves to and from dialysis.

12.     On or about the dates listed below, defendants THAEL KURAN, FRITZROY BROWN, and others known and unknown to the grand jury, caused fraudulent claims to be submitted to Medicare for each of the patients identified by initials below, for ambulance services that were not medically necessary.

| Patient Initials | Approximate Date of Transportation | Approximate Claim Amount | Approximate Date of Claim Submission | Approximate Payment Date | Health Care Benefit Program |
|---|---|---|---|---|---|
| V.P. | 7/18/2011 | $197.41 | 7/26/2011 | 7/28/2011 | Medicare |
| W.G. | 7/18/2011 | $191.93 | 7/28/2011 | 8/5/2011 | Medicare |
| C.B. | 8/29/2011 | $224.85 | 9/7/2011 | 9/9/2011 | Medicare |
| D.B. | 9/1/2011 | $191.93 | 9/7/2011 | 9/9/2011 | Medicare |
| W.C. | 7/1/2011 | $186.44 | 7/7/2011 | 7/15/2011 | Medicare |
| K.R. | 7/1/2011 | $202.90 | 7/7/2011 | 7/15/2011 | Medicare |

All in violation of Title 18, United States Code, Section 1349.

## COUNT TWO
### (False Statements in a Health Care Matter – THAEL KURAN)

**THE GRAND JURY FURTHER CHARGES THAT:**

      1.    Paragraphs 1 through 22 and 24 through 34 and Overt Acts 1 through 12 of Count One are incorporated here.

      2.    On or about July 18, 2011, in the Eastern District of Pennsylvania, defendant

### THAEL KURAN

in a matter involving a health care benefit program, falsified, concealed, and covered up, and aided and abetted the falsification, concealment, and covering up, by trick, scheme, and device, a material fact in connection with the delivery of and payment for health care benefits, items, and services, in that the defendant created and caused to be created a false document, that is, a "trip sheet" for ambulance transportation provided to the patient identified by initials below, that falsely described that the patient was transported by ambulance when, in fact, the individual was transported in defendant THAEL KURAN's personal vehicle, a red Honda Civic:

| Patient Initials | Approximate Date of False Statement on Trip Sheet | Health Care Benefit Program |
|---|---|---|
| W.G. | July 18, 2011 | Medicare |

In violation of Title 18, United States Code, Sections 1035 and 2.

13

## COUNT THREE
### (False Statements in a Health Care Matter – FRITZROY BROWN)

**THE GRAND JURY FURTHER CHARGES THAT:**

        1.      Paragraphs 1 through 22 and 24 through 34 and Overt Acts 1 through 12 of Count One are incorporated here.

        2.      On or about July 18, 2011, at Philadelphia, in the Eastern District of Pennsylvania, and elsewhere, defendant

### FRITZROY BROWN

in a matter involving a health care benefit program, falsified, concealed, and covered up, and aided and abetted the falsification, concealment, and covering up, by trick, scheme, and device, a material fact in connection with the delivery of and payment for health care benefits, items, and services, in that the defendant created and caused to be created a false document, that is a "trip sheet" for ambulance transportation provided to the patient identified by initials below, that concealed and falsely described that the patient was transported by ambulance when, in fact, the individual was transported in defendant FRITZROY BROWN's personal vehicle, a black Dodge Magnum:

| Patient Initials | Approximate Date of False Statement on Trip Sheet | Health Care Benefit Program |
|---|---|---|
| V.P. | July 18, 2011 | Medicare |

In violation of Title 18, United States Code, Sections 1035 and 2.

14

## COUNT FOUR
### (Theft of Government Property – FRITZROY BROWN)

**THE GRAND JURY FURTHER CHARGES THAT:**

1.     Paragraphs 1 through 22 and 24 through 34 and Overt Acts 1 through 12 of Count One are incorporated here.

2.     From in or about November 2010 through in or about May 2011, defendant FRITZROY BROWN was working for Brotherly Love.  He received weekly payments from Brotherly Love of approximately $1,000, and he received other additional compensation from Brotherly Love periodically.

3.     Defendant FRITZROY BROWN was not entitled to receive Emergency Unemployment Compensation ("EUC') benefits.

4.     From on or about November 20, 2010, through on or about May 7, 2011, in Philadelphia, in the Eastern District of Pennsylvania, and elsewhere, defendant

### FRITZROY BROWN

stole, purloined, and knowingly converted to his own use a thing of value of the United States in an amount over $1,000, that is, a series of monthly Emergency Unemployment Compensation benefits paid by the Federal Department of Labor, totaling $14,150 in the aggregate, which the defendant received by electronic transfer to his bank account at Citizen's Bank.

In violation of Title 18, United States Code, Section 641.

## COUNTS FIVE THROUGH SEVEN
### (Wire Fraud– FRITZROY BROWN)

**THE GRAND JURY FURTHER CHARGES THAT:**

   1.  Paragraphs 1 and 2 of Count Five are incorporated here.

### THE SCHEME TO DEFRAUD

   2.  From on or about November 20, 2010 through on or about May 7, 2011, defendant FRITZROY BROWN devised and intended to devise a scheme to defraud the Commonwealth of Pennsylvania Department of Labor and to obtain money and property by means of false and fraudulent pretenses, representations, and promises.

   3.  It was the object of the scheme described in paragraph 2 for defendant FRITZROY BROWN to receive and continue to receive Emergency Unemployment Compensation benefits to which he was not entitled.

### MANNER AND MEANS

   It was part of the scheme that:

   4.  Defendant FRITZROY BROWN used the internet to apply for and receive unemployment compensation benefits from the Pennsylvania Department of Labor at the same time that he was working and receiving income and therefore ineligible to receive such benefits.

   5.  Defendant FRITZROY BROWN failed to disclose that he was working for and receiving income from Brotherly Love Ambulance, Inc.

   6.  Defendant FRITZROY BROWN received 25 weeks of payments to which he was not entitled, resulting in him fraudulently obtaining Emergency Unemployment Compensation benefits of approximately $14,150.

7.     On or about the dates set forth below, in the Eastern District of

Pennsylvania, defendant

**FRITZROY BROWN**

for the purpose of executing the scheme described above, and attempting to do so, caused to be

transmitted by means of wire communication in interstate commerce the signals and sounds

described below for each count, each transmission constituting a separate count of this

indictment:

| COUNT | DATE | DESCRIPTION |
|-------|------|-------------|
| 5 | November 24, 2010 | Online internet filing for unemployment compensation benefits while concealing that he was working and earning income |
| 6 | February 13, 2011 | Online internet filing for unemployment compensation benefits while concealing that he was working and earning income |
| 7 | May 15, 2011 | Online internet filing for unemployment compensation benefits while concealing that he was working and earning income |

All in violation of Title 18, United States Code, Section 1343.

## COUNT EIGHT
### (Receipt of Kickbacks – CRAIG BROWN)

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      Paragraphs 1 through 22 and 24 through 34 and Overt Acts 1 through 12 of Count One are incorporated here.

2.      In or about June 2011, and on other dates unknown to the Grand Jury, at Philadelphia, in the Eastern District of Pennsylvania, and elsewhere, defendant

### CRAIG BROWN

knowingly and willfully solicited and received, directly and indirectly, remuneration from Brotherly Love, in the form of cash payments and payments by check, in return for ordering and arranging for a service to be ordered, that is, ambulance transport, for which payment may be made in whole and in part under a Federal health care program, namely Medicare.

In violation of Title 42, United States Code, Section 1320a-7b(b)(1)(B).

18

## COUNT NINE
### (Receipt of Kickbacks – CRAIG BROWN)

**THE GRAND JURY FURTHER CHARGES THAT:**

      1.     Paragraphs 1 through 22 and 24 through 34 and Overt Acts 1 through 12 of Count One are incorporated here.

      2.     On or about June 2, 2011, at Philadelphia, in the Eastern District of Pennsylvania, and elsewhere, defendant

### CRAIG BROWN

knowingly and willfully solicited and received, directly and indirectly, overtly and covertly, remuneration in the amount of approximately $500 from Brotherly Love Ambulance, Inc., in return for defendant CRAIG BROWN referring a patient known to the grand jury to Brotherly Love for the furnishing and arranging for furnishing of ambulance transport, for which payment may be made in whole and in part under a Federal health care program, namely Medicare.

      All in violation of Title 42, United States Code, Section 1320a-7b(b)(1)(B).

## COUNT TEN
**(Receipt of Kickbacks – CRAIG BROWN)**

**THE GRAND JURY FURTHER CHARGES THAT:**

   1. Paragraphs 1 through 22 and 24 through 34 and Overt Acts 1 through 12 of Count One are incorporated here.

   2. On or about July 21, 2011, at Philadelphia, in the Eastern District of Pennsylvania, and elsewhere, defendant

**CRAIG BROWN**

knowingly and willfully solicited and received, directly and indirectly, overtly and covertly, remuneration in the amount of approximately $1,000 from Brotherly Love Ambulance, Inc., in the form of a Brotherly Love check number 1130 for "Pt. Care," in return for defendant CRAIG BROWN referring a patient unknown to the grand jury to Brotherly Love for the furnishing and arranging for furnishing of ambulance transport, for which payment may be made in whole and in part under a Federal health care program, namely Medicare.

   All in violation of Title 42, United States Code, Section 1320a-7b(b)(1)(A).

## COUNTS ELEVEN AND TWELVE
### (False Statement in a Health Care Matter – CRAIG BROWN)

**THE GRAND JURY FURTHER CHARGES THAT:**

1.   Paragraphs 1 through 22 and 24 through 34 and Overt Acts 1 through 12 of Count One are incorporated here.

2.   On or about the dates listed below, at Philadelphia, in the Eastern District of Pennsylvania, and elsewhere, defendant

### CRAIG BROWN

in a matter involving a health care benefit program, made materially false, fictitious and fraudulent statements and representations and made and used false writings and documents knowing the same to contain materially false, fictitious and fraudulent entries, in that defendant CRAIG BROWN signed false documents, that is, "trip sheets" indicating that he had been transported to dialysis by ambulance, when defendant CRAIG BROWN had in fact driven himself to dialysis in his own personal vehicle, a silver Cadillac CTS, each date constituting a separate count of this indictment:

| Count | Approximate Date of False Statement on Trip Sheet | Health Care Benefit Program |
|:-----:|:--------------------------------------------------:|:---------------------------:|
| 11 | August 29, 2011 | Medicare |
| 12 | September 21, 2011 | Medicare |

In violation of Title 18, United States Code, Section 1035.

## COUNTS THIRTEEN THROUGH FIFTEEN
### (Receipt of Kickbacks – DERRICK BROWN)

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      Paragraphs 1 through 22 and 24 through 34 and Overt Acts 1 through 12 of Count One are incorporated here.

2.      On or about June 3, 2011, defendant DERRICK BROWN knowingly and willfully solicited a kickback, that is, an increase in the amount he was receiving from Brotherly Love to $300 per month, by way of a text message that defendant DERRICK BROWN sent to a Brotherly Love employee known to the grand jury.  In so doing, defendant DERRICK BROWN solicited remuneration in return for ordering and arranging for a service to be ordered, that is, ambulance transport, for which payment may be made in whole and in part under a Federal health care program, namely Medicare.

3.      On or about the dates listed below, at Philadelphia, in the Eastern District of Pennsylvania, and elsewhere, defendant

### DERRICK BROWN

knowingly and willfully solicited and received, directly and indirectly, remuneration in the amounts listed below, from Brotherly Love, in the form of cash payments, in return for ordering and arranging for a service to be ordered, that is, ambulance transport, for which payment may be made in whole and in part under a Federal health care program, namely Medicare, each date constituting a separate count of this indictment:

22

| Count | Approximate Date of Payment | Approximate Amount of Payment |
|-------|------------------------------|-------------------------------|
| 13 | July 1, 2011 | $300 |
| 14 | July 29, 2011 | $300 |
| 15 | September 1, 2011 | $400 |

In violation of Title 42, United States Code, Section 1320a-7b(b)(1)(B).

## COUNT SIXTEEN
### (False Statement – DERRICK BROWN)

**THE GRAND JURY FURTHER CHARGES THAT:**

      1.     Paragraphs 1 through 22 and 24 through 34 and Overt Acts 1 through 12 of Count One are incorporated here.

      2.     On or about October 5, 2011, at Philadelphia, in the Eastern District of Pennsylvania, and elsewhere, defendant

### DERRICK BROWN

in a matter within the jurisdiction of the Federal Bureau of Investigation ("FBI") and the United States Department of Health and Human Services, Office of the Inspector General ("HHS-OIG"), both agencies of the executive branch of the United States, knowingly and willfully made materially false, fictitious and fraudulent statements and representations and falsified and concealed a material fact, in that defendant DERRICK BROWN falsely stated to federal agents that he had never received a cash payment for riding with Brotherly Love when, as defendant DERRICK BROWN well knew, he had received cash payments for riding with Brotherly Love.

      In violation of Title 18, United States Code, Section 1001.

## COUNTS SEVENTEEN THROUGH NINETEEN
### (Receipt of Kickbacks – WILLIAM CONNER)

**THE GRAND JURY FURTHER CHARGES THAT:**

      1.    Paragraphs 1 through 22 and 24 through 34 and Overt Acts 1 through 12 of Count One are incorporated here.

      2.    On or about the dates listed below, at Philadelphia, in the Eastern District of Pennsylvania, and elsewhere, defendant

### WILLIAM CONNER

knowingly and willfully solicited and received, directly and indirectly, remuneration in the amounts listed below, from Brotherly Love, in the form of cash payments, in return for ordering and arranging for a service to be ordered, that is, ambulance transport, for which payment may be made in whole and in part under a Federal health care program, namely Medicare, each date constituting a separate count of this indictment:

| Count | Approximate Date of Payment | Approximate Amount of Payment |
|-------|-----------------------------|-------------------------------|
| 17 | July 1, 2011 | $300 |
| 18 | July 29, 2011 | $300 |
| 19 | September 1, 2011 | $500 |

In violation of Title 42, United States Code, Section 1320a-7b(b)(1)(B).

## COUNT TWENTY
### (False Statement – WILLIAM CONNER)

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      Paragraphs 1 through 22 and 24 through 34 and Overt Acts 1 through 12 of Count One are incorporated here.

2.      On or about October 5, 2011, at Philadelphia, in the Eastern District of Pennsylvania, and elsewhere, defendant

### WILLIAM CONNER

in a matter within the jurisdiction of the Federal Bureau of Investigation ("FBI") and the United States Department of Health and Human Services, Office of the Inspector General ("HHS-OIG"), both agencies of the executive branch of the United States, knowingly and willfully made materially false, fictitious and fraudulent statements and representations and falsified and concealed a material fact, in that defendant WILLIAM CONNER falsely stated to federal agents that he had never received a cash payment for riding with Brotherly Love when, as defendant WILLIAM CONNER well knew, he had received cash payments for riding with Brotherly Love.

In violation of Title 18, United States Code, Section 1001.

## COUNTS TWENTY-ONE AND TWENTY-TWO
### (Receipt of Kickbacks – KEISHA REGUSTERS)

**THE GRAND JURY FURTHER CHARGES THAT:**

   1. Paragraphs 1 through 22 and 24 through 34 and Overt Acts 1 through 12 of Count One are incorporated here.

   2. On or about April 20, 2011, defendant KEISHA REGUSTERS solicited a kickback, that is, $100 in cash, by way of a text message that defendant REGUSTERS sent to a Brotherly Love employee known to the grand jury.  In so doing, defendant REGUSTERS solicited remuneration in return for ordering and arranging for a service to be ordered, that is, ambulance transport, for which payment may be made in whole and in part under a Federal health care program, namely Medicare.

   3. On or about the dates listed below, at Philadelphia, in the Eastern District of Pennsylvania, and elsewhere, defendant

### KEISHA REGUSTERS

knowingly and willfully solicited and received, directly and indirectly, remuneration in the amounts listed below, from Brotherly Love, in the form of cash payments, in return for ordering and arranging for a service to be ordered, that is, ambulance transport, for which payment may be made in whole and in part under a Federal health care program, namely Medicare, each date constituting a separate count of this indictment:

27

| Count | Approximate Date of Payment | Approximate Amount of Payment |
|:-----:|:---------------------------:|:-----------------------------:|
| 21 | July 1, 2011 | $300 |
| 22 | July 28, 2011 | $300 |

In violation of Title 42, United States Code, Section 1320a-7b(b)(1)(B).

## NOTICE OF FORFEITURE

**THE GRAND JURY FURTHER CHARGES THAT:**

      1.     As a result of the violation of Title 18, United States Code, Section 1349, set forth in this indictment, defendants

**THAEL KURAN and**
**FRITZROY BROWN**

shall forfeit to the United States of America any property that constitutes or is derived from gross proceeds traceable to the commission of such offense, including, but not limited to, over $2,015,712.52 paid for false claims, and any other accounts and proceeds of these offenses.

      2.     If any of the property subject to forfeiture, as a result of any act or omission of the defendants:

      (a)     cannot be located upon the exercise of due diligence;

      (b)     has been transferred or sold to, or deposited with, a third party;

      (c)     has been placed beyond the jurisdiction of the Court; or

      (d)     has been substantially diminished in value,

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property subject to forfeiture.

All pursuant to Title 18, United States Code, Section 982(a)(7).

**A TRUE BILL:**

**GRAND JURY FOREPERSON**

**ZANE DAVID MEMEGER**
**United States Attorney**

30